[Civ. No. 4914. Third Appellate District.—December 27, 1933.]

IRENE FORSMAN, Appellant, v. JULIA COLTON et al., Respondents.

L. C. Smith for Appellant.

Hugh K. McKevitt and Carr & Kennedy for Respondents.

PULLEN, P. J.—This in an appeal from a judgment of nonsuit in an action alleging wilful misconduct, brought by plaintiff against defendants.

The court may grant a nonsuit only when, disregarding conflicting evidence and giving to plaintiff all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from the evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict or judgment in his favor if such were given. (*Perera* v. *Panama Pacific International Exposition Co.*, 179 Cal. 63 [175 Pac. 454].)

It therefore becomes necessary in order to pass upon the ruling of the court to review the evidence introduced by plaintiff and determine whether or not there was sufficient to support a verdict in her favor.

About 2 o'clock of an afternoon a few days prior to Christmas, 1931, defendants, husband and wife, invited plaintiff to accompany them into the mountains to get a Christmas tree. The invitation was accepted and the three set out in defendants' car. They reached their destination over a narrow mountain road without mishap, and found a tree suitable for their purpose. On the way home Mr. Colton was driving, and seated next to him was Mrs. Colton, and on the outside was Mrs. Forsman. The return was made over the same narrow mountain road they had traveled in going out. The road was muddy, some snow lying about in spots, but the sun was shining and they were traveling downgrade about ten miles an hour. They had not proceeded far on the return trip when on a turn at one of the wider portions of the highway, the car left the road, turned over and injured plaintiff.

There are two versions of the cause of the accident. Mrs. Forsman testified they were driving slowly, and immediately before they reached the spot where the car went over the bank there was a lull in the conversation, and the car began gradually to pursue a course from the right to the left side of the road for a distance of about thirty feet. She turned to look at the driver and observed his eyes were closed, his head bowed and the car heading directly toward the embankment. Whether she made an outcry or not she did not remember, for in the next instant they were over the edge of the road, and the car lying on its side about six feet below the grade. Colton, the driver, denied that he was asleep. He admitted, however, that he had the night before attended a meeting of an organization of which he was a member, and the only sleep he had obtained was upon a work bench at his place of employment. He testified he was driving slowly, not over ten miles an hour; the road was muddy and slippery and as he approached the turn where the accident occurred the left wheel of the automobile got into the soft dirt on the left side or shoulder of the road; as he attempted to bring the car back again into the road the wheel mired so deeply into the soft mud that the car

slipped toward the left. When he realized he could not bring the car back on the road he seized the dash to protect his companions from falling, at the same time to avoid upsetting, turned the wheel sharply to the left in an attempt to head the car straight down the bank. He apparently made no attempt to apply the brakes. The car left the roadway and tipped over on its side. The accident happened about 3 o'clock of an afternoon upon a road with which the driver was familiar. The sky was clear and there was nothing to obstruct the vision of the driver, and the car was mechanically in good condition.

The question here for consideration is whether this evidence will support a judgment based upon wilful misconduct on the part of defendant, as that term is used in section 141¾ of the California Vehicle Act.

The Supreme Court of Massachusetts in *In re Burns,* 218 Mass. 8 [105 N. E. 601, 602, Ann. Cas. 1916A, 787], defines wilful misconduct by saying: "It is much more than mere negligence or even gross or culpable negligence. It involves conduct of a *quasi*-criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences."

This was apparently the meaning that the legislature intended to adopt, judging from the legislative history of section 141¾ of the California Vehicle Act.

In 1929 ordinary negligence was eliminated as a basis for recovery in guest cases, the proviso then being enacted that the owner, driver or person responsible for the operation of a vehicle should not be released from liability if the death or injury of a guest was the proximate result of the intoxication, wilful misconduct or gross negligence of such owner, driver or person responsible for the operation of such vehicle. In 1931 the legislature went a step further and gross negligence was eliminated, now making it necessary to establish either intoxication or wilful misconduct.

As said in *Howard* v. *Howard,* 132 Cal. App. 124 [22 Pac. (2d) 279, 281], "the intent of the legislature as expressed in these enactments requires that wilful misconduct be interpreted as something quite different from negligence, even gross negligence, and that it involves distinct positive ele-

ments rather than the merely negative elements of negligence or carelessness."

In *Walker* v. *Bacon*, 132 Cal. App. 625 [23 Pac. (2d) 520], the court, considering the case of *Howard* v. *Howard*, *supra*, said that to conclude that "wilful misconduct" is something different from negligence is to invite difficulties, for if there is no negligence there can be no wilful misconduct, and, "While negligence may be involved in wilful misconduct it is apparent that the legislature intended to confine the right of recovery to a degree of carelessness and recklessness that is greater and beyond that which the law then knew and defined as gross negligence and which is 'wilful' on the part of the responsible perso'n." The court then proceeds to define wilful misconduct as "wilfully, that is intentionally, doing something which a driver should not do, or failing to do something which he could do, in the operation of a motor vehicle under circumstances from which an accident or injury to the passenger would be probable. Of course, wilful misconduct may be inferred from the circumstances surrounding the accident." Or, as said in *Helm* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510] : "To constitute wilful misconduct there must be actual knowledge or that which in the law is esteemed to be equivalent of actual knowledge of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury."

Applying these rules to the instant case it seems clear that under neither theory can the injuries to the plaintiff be said to be the result of wilful misconduct. Whether we accept the explanation of defendant Colton that the wheels of the car became imbedded into the soft dirt of the roadway, causing the car to bear to the side of the road, and finding the car slipping, he, to avoid tipping, turned sharply to the left in order to go directly off the edge; or whether we accept the theory of plaintiff that defendant fell asleep at the wheel, would not constitute wilful misconduct.

In the case of *Kaplan* v. *Kaplan*, 213 Iowa, 646 [239 N. W. 682], an Iowa court had before it for consideration a case in which a father invited his daughter to accompany him by automobile on a trip, and while the father was driving, fell asleep, and his daughter was injured in an accident which followed. The action was brought under an Iowa

statute which provides that a guest cannot recover "if damages caused as the result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of said motor vehicle". Upon the trial of the action, the lower court, on motion, directed a verdict in favor of the defendant on the ground that defendant, as a matter of law, was not guilty of recklessness within the meaning of the statute. In the course of its opinion the Supreme Court said: " . . . the fact that the father permitted sleep to overcome him and drove the car while asleep is the only proposition argued by the parties as the cause of the accident. There is no evidence of any other cause. Can it be said that a person, while driving along the highway, who is involuntarily overcome by sleep is guilty of reckless operation of the automobile within the meaning of the law? We think not . . . His unconscious conduct while asleep or semi-conscious conduct while going to sleep, or the mere fact that he permitted sleep to overcome him does not evince a heedless disregard to the right of the daughter. *Coconower* v. *Stoddard*, (Ind. App.) 182 N. E. 466."

Weighing the evidence adduced in the light of the definition of wilful misconduct, we must hold that no wilful misconduct is here shown and the order granting the nonsuit was proper.

Appellant also raises the question of the constitutionality of section 141¾ of the California Vehicle Act, claiming that by amending the section by eliminating "gross negligence" as a means of recovery to a guest, it entirely destroys the right of recovery for negligence, which is in violation of section 10, article I, of the federal Constitution, and sections 13 and 16, article I, of the Constitution of the state of California.

We believe the contention is fully answered adverse to appellant in the case of *Castro* v. *Singh*, 131 Cal. App. 106 [21 Pac. (2d) 169], and the constitutionality of the section had already been upheld in *Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438].

The accident here considered occurred December 15, 1931, and the amendment to section 141¾ of the California Vehicle Act became effective August 14, 1931. It cannot, therefore, be contended that appellant had any vested right

or interest prior to the infliction of the injuries of which she complains. She cannot, therefore, object to the action of the legislature in restricting the circumstances under which a recovery for injuries may be had.

The judgment of nonsuit is therefore affirmed.

Thompson, J., and Plummer, J., concurred.