[Civ. No. 6410.   Third Appellate District.—May 14, 1940.]

Mrs. H. P. SPENCER, Respondent, v. H. M. SCOTT et al., Defendants; MERLE B. PETERSON, Appellant.

H. K. Landram for Appellant.

C. Ray Robinson, W. Eugene Craven and Willard B. Treadwell for Respondent.

THOMPSON, Acting P. J.—Merle B. Peterson has appealed from a judgment of $5,473 and costs which was rendered against him in an automobile casualty case. The plaintiff was injured while riding with him as a guest. It is asserted the evidence fails to support the finding of the trial court that the accident occurred through the wilful misconduct of the appellant.

The appellant and Miss Laura Scott drove from Merced to Berkeley in a Dodge sedan automobile owned by her father. Just prior to leaving Merced the brakes of the machine were relined and adjusted at a garage. After those repairs were completed Miss Scott noticed that the brakes were still "a little loose". She returned to the garage the same afternoon for gasoline and told the mechanic that the brakes seemed to be too loose. She did not direct him to again adjust the brakes, but she assumed that he did so. The brakes were still too loosely adjusted. She testified in that regard: "They were a little tighter, but weren't tight enough when I started on the trip." The following day she drove the car to Berkeley. The appellant accompanied her. On the way to Los Banos she discovered that the brakes were still "a little bit loose". It was necessary to force the lever nearly down to the footboard to stop the machine. She informed Mr. Peterson of

that defect. The car also had an emergency brake which was in good mechanical condition. She said she did not notice that an application of the brakes caused the machine to pull away from a straight course toward either side.

At Berkeley the following day, Miss Scott picked up her sister and her friend, the plaintiff, Mrs. H. K. Spencer. They started about 12:30 P. M. to drive back to Merced by way of San Jose. It was raining and the pavements were wet. The appellant, Merle B. Peterson, was driving the car. Miss Scott sat by his side. The respondent occupied the rear seat. Mr. Peterson testified regarding the condition of the brakes:

"Q. And when you applied the brakes the first time, there was a tendency to pull to the left? A. Just a little. . . . Q. But they were out of adjustment, is that the way you describe it? A. Well, slightly out of adjustment to the extent that one brake may have been a little tighter than the other."

It had ceased raining but the pavement was still wet. As the vehicle left San Jose on a three-lane highway, a passenger bus traveled ahead of it at the rate of 25 or 30 miles an hour. The appellant was driving at the rate of about 45 miles an hour. He may have reached a speed of 50 miles an hour. A truck and trailer was approaching from the south along its proper easterly lane. An automobile driven by Laura Griffith was following behind the truck and trailer in the easterly lane at a distance of about 200 feet or more. The center lane was then unoccupied. A couple of other vehicles passed, going north, along their proper side of the highway. There was then no other traffic in that vicinity. As the appellant's car reached a point about 250 feet behind the passenger bus, which was traveling comparatively slowly, Mr. Peterson, realizing he would soon overtake it, released his accelerator, and reduced the speed of his car. He made no attempt to pass the bus, nor to turn his machine into the center lane. There is no evidence that he applied the brakes forcibly as in an emergency. There is no evidence of an emergency until after the brakes were applied. The appellant merely slackened the speed of his machine as he approached the bus which preceded him. He released the accelerator when he reached a point about 250 feet behind the bus. He began to apply his brakes when he was about 80

feet away. His machine never reached a point closer than 40 feet from the bus.

It appears that at the same time Mr. Peterson began to slacken the speed of his car as he approached the bus the driver of the northbound Griffith car was engaged in attempting to pass the truck and trailer which preceded it. For that purpose Laura Griffith was then operating her car along the center lane of the highway. As she passed the southbound bus on her left and the northbound truck and trailer on her right, the appellant's machine suddenly skidded into the center lane and crashed into the Griffith car. As a result of the collision the respondent sustained a broken leg. Regarding the accident, Mr. Peterson testified:

"Q. You saw the car ahead of you for about 250 feet? A. Approximately 250 feet. Q. What speed were you traveling when you saw the car? . . . A. About 40. Q. And then what did you do? A. I released the accelerator completely. Q. And how fast was the car traveling in front of you at that time? A. Well, . . . I would say 25 or 30, proceeding very slowly. . . . I recall just beginning to slow down as the Chevrolet behind the truck was very close to the rear of the truck, beginning to pass [the truck]. . . . Q. At that time had you started to go around the southbound car? A. No, I didn't make any attempt to go around it. Q. Then as you came up, how close was the closest point that you approached the southbound car? A. Probably, maybe 40 feet, 40 or 50 feet. Q. At that time you applied your brakes? A. Just before that time. Q. Just before that you applied your brakes? A. Yes. Q. And the car then skidded to the left, did it not? A. Well, the action was, the brake action was quite effective in that as I applied the brakes slightly the car seemed to skid, sort of a skidding effect to the extreme left, directly in the path of the Chevrolet. . . . Q. I say, you skidded into the center lane? A. Yes, that is right. . . . Q. How far into the center lane did you skid before the impact occurred? A. Well, to the point of connection with the other car, I would say maybe four or five feet inside of the line. . . . Q. How far behind the car preceding you were you at the time you applied your brakes? A. My best judgment would be, I would say about maybe 80 feet."

Upon that evidence the court found that the accident was the result of appellant's driving his automobile at a reckless

and excessive rate of speed "while in heavy traffic" constituting wilful misconduct on his part. Judgment was accordingly rendered against him, as we have previously stated.

Under the trend of authorities in California we are impelled to hold the findings and judgment are not supported by the evidence. We are convinced the evidence fails to show wilful misconduct on the part of Merle B. Peterson, the driver of the Scott car, and that the respondent, as a guest, may therefore not recover damages for the injuries which she sustained as a result of the accident on account of the prohibition of section 403 of the California Vehicle Code. (*Porter* v. *Hofman*, 12 Cal. (2d) 445 [85 Pac. (2d) 447]; *Lennon* v. *Woodbury*, 3 Cal. App. (2d) 595 [40 Pac. (2d) 292]; *Turner* v. *Standard Oil Co.*, 134 Cal. App. 622 [25 Pac. (2d) 988]; *Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. (2d) 279]; *Horning* v. *Gerlach*, 139 Cal. App. 470 [34 Pac. (2d) 504]; *Rhoads* v. *Studley*, 15 Cal. App. (2d) 726 [59 Pac. (2d) 1082].) In all of the preceding cases, except the last one cited, judgments in favor of guests were reversed on the ground that the facts failed to constitute wilful misconduct. In the Porter case, *supra*, the definition of wilful misconduct is quoted with approval from the case of *Norton* v. *Puter*, 138 Cal. App. 253 [32 Pac. (2d) 172]. While it is true that each case must be determined on its particular facts, it is necessarily true that wilful misconduct requires proof of conduct much more reckless and flagrant than that which would constitute mere carelessness or negligence. (4 Blashfield's Cyc. of Automobile Law, p. 110, sec. 2322.) Otherwise there would be no occasion for the adoption of section 403 of the Vehicle Code. In the Porter case the driver of the automobile was operating her car in rain on a wet highway at the rate of forty-five miles an hour. She turned her head and body as the machine reached a curve in the roadway to reprimand children who were playing with toys in the rear seat. She lost control of the vehicle, which skidded from the paved surface and overturned. In the Lennon case, *supra*, the driver of the machine was operating her car at the rate of 40 to 50 miles an hour on a wet highway in the rain. The machine skidded from the roadway into a ditch, injuring the guest. In the Turner case, *supra*, in support of the judgment, the respondent relied on proof of alleged defective brakes. It was claimed that the driving of a truck on a moun-

tain highway under such circumstances constituted wilful negligence. In the Howard case, *supra*, the driver of the automobile was operating his car on a wet pavement in the rain. He suddenly turned his machine to avoid colliding with an approaching car, and his automobile skidded and overturned, injuring the guest. In the Horning case, *supra*, the guest fell from the machine and was injured when the left door of the car suddenly opened while the automobile was making a left-hand turn at a rapid rate of speed. The owner had previous knowledge of the defective door.

In the present case the owner of the automobile had taken the precaution to have the brakes of her car relined and adjusted immediately before setting out on the journey in which the accident occurred; she discovered after her departure that the brakes were still slightly defective; there was a mere tendency for the car to pull to the left when the brakes were applied; the machine was also equipped with an emergency brake in good condition; the car had not previously skidded on the wet pavement; the automobile was following a passenger bus on a straight, level, three-lane highway at the rate of only 40 or 45 miles an hour; there was no attempt to pass the bus nor to enter the middle lane of the highway; the accelerator was released at a distance of 250 feet behind the bus and the speed of the car was diminished; at a distance of 80 feet from the bus the brakes were applied; there was no apparent emergency; the skidding of the car could not reasonably be anticipated; when the machine reached a point about 40 feet from the bus, it skidded into the middle lane of the highway, colliding with an approaching automobile and the guest was injured. Under such circumstances it may not be said the driver of the Scott car was guilty of wilful misconduct.

The judgment is reversed.

Lemmon, J., *pro tem.*, and Tuttle, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 13, 1940, and the following opinion then rendered thereon:

THE COURT.—We have inadvertently referred to the automobile which preceded the defendant's car immediately

before the accident occurred, as a "passenger bus". It appears that it was not a commercial bus, but merely an ordinary passenger machine. That erroneous reference to the identity of the machine seems to be immaterial. The character of that vehicle adds no force to the appellant's contention that the accident was the result of wilful misconduct. We are unable to escape from the conclusion that the facts of this case do not constitute wilful misconduct on the part of the driver of defendant's machine.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 12, 1940. Carter, J., voted for a hearing.