[Civ. No. 4956. Third Appellate District.—December 14, 1933.]

ANN OLSON, Respondent, v. J. C. GAY, Appellant.

Wakefield & Hansen, C. A. Pinkham, Wm. C. Crossland and Chester O. Hansen for Appellant.

Kidd, Schell & Delamer, as *Amici Curiae* on Behalf of Appellant.

Edmond A. Chevalier and Frank Curran for Respondent.

PULLEN, P. J.—This is an appeal by defendant from a judgment in an action brought by plaintiff against him as the driver of an automobile. The injuries sustained were the result of a collision, and defendant is charged by plaintiff with wilful misconduct in the operation of his car.

At the time of the collision plaintiff was a guest of defendant, and the single issue here presented is whether the accident and injuries sustained by plaintiff were the direct and proximate result of wilful misconduct on the part of

defendant, as that term is defined in section 141¾ of the California Vehicle Act. Defendant, appellant herein, contends that the evidence adduced is insufficient to support the implied finding of the jury that he was guilty of wilful misconduct, and it will therefore be necessary to consider in some detail the evidence adduced.

As plaintiff and defendant were proceeding along the Golden State highway north of Madera in the county of Merced, about 9 or 9:30 o'clock on an evening of May, 1932, they approached a fleet of three trucks, each drawing a trailer, the truck and trailer being about 40 feet in length over all, and traveling at intervals of 200 to 300 feet at a rate of approximately 28 miles an hour.

As defendant, who was driving the automobile, approached the trucks he was proceeding along a long straight portion of the highway at a rate of speed estimated at from 55 to 60 miles an hour. Plaintiff had remonstrated with defendant as to the speed but defendant replied that he was anxious to reach San Francisco before midnight and that she should not worry as nothing would happen. As he drove up behind the rear truck and trailer he suddenly and at a high rate of speed, swerved to his left, passed the truck and swung in behind the second truck in the line. Again he suddenly swerved to the left, narrowly missing a head-on collision with a south-bound car, and again plaintiff remonstrated at the speed and the manner of his driving but he made no reply and swung in between the first and second trucks. Just as defendant was preparing to cut out and pass the first truck plaintiff told defendant that to attempt to pass the truck under the circumstances would be suicide. To this he again paid no heed but swung out in the line of the south-bound traffic, and almost immediately a collision occurred between the car of defendant and a south-bound car on the right side of the highway, traveling about 40 miles per hour, causing the injuries complained of.

Plaintiff testified that she was seated on the right of the automobile, yet she clearly saw the lights of several cars approaching them from the north as they cut in and out between the trucks. Defendant was seated on the left and in a much better position to see the oncoming traffic, yet he continued at a speed of 55 to 60 miles an hour, and in spite of the warning of plaintiff and the lights of the cars

he must have seen, he persisted in swinging into the line of these cars.

The driver of the rear truck testified defendant passed him at a speed in excess of 55 miles an hour in a reckless manner and cut in so sharply that if the car had skidded it would have been struck by the truck. A driver of another of the trucks testified that the lights of the oncoming cars were plainly visible.

Defendant attempted to establish the fact that the driver of the Chrysler with which he collided was zigzagging and on the left of the highway and therefore the car was hidden by the leading truck and he did not see it (a rather inconsistent statement), but a witness who was proceeding south immediately behind the Chrysler testified that the car was in its proper place on the highway, traveling about 40 miles an hour.

The jury was amply sustained in their implied finding that defendant was proceeding in a negligent manner at the time of the collision.

Section 141¾ of the California Vehicle Act provides in effect that any person who as a guest accepts a ride in any vehicle moving upon a public highway, and while so driving as such guest is injured, shall have no right of recovery against the driver of such vehicle, provided however, that the driver shall not be relieved for injury or death of such guest proximately resulting from the intoxication or wilful misconduct of such driver.

The courts have on numerous occasions been called upon to define "wilful misconduct" as the term is used in the California Vehicle Act and in the Workmen's Compensation Act. A definition frequently quoted is found in *Helme* v. *Western Milling Co.,* 43 Cal. App. 416 [185 Pac. 510]. " 'Wilful misconduct' means something different from and more than negligence, however gross. . . . The mere failure to perform a statutory duty is not, alone, wilful misconduct. . . . To constitute 'wilful misconduct', there must be actual knowledge, or that which in law is esteemed to be equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury."

In *Nelson* v. *Westergaard,* 130 Cal. App. 79 [19 Pac. (2d) 867], the following instruction was given: "Wilful miscon-

duct would imply a purposeful disregard of the care and diligence which the said defendant owed plaintiff," which instruction was approved by the reviewing court as a proper definition of the term.

*Walker* v. *Bacon*, 132 Cal. App. 625 [23 Pac. (2d) 520], is a recent case defining wilful misconduct. There the operator of an automobile drove his car at a rate of 60 miles an hour on a rough and high-crowned road against the protests of his guests, he also knowing that the steering knuckle of his car was badly worn. In the concurring opinion in that case Mr. Justice Marks said:

"Numerous attempts have been made to define 'wilful misconduct' without any definitely satisfactory result. In *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510], it was said: 'Wilful misconduct means something different from and more than negligence, however gross.' (See, also, *Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. (2d) 279].) It invites difficulties to conclude that 'wilful misconduct' is 'something different' from negligence. If there is no negligence there can be no wilful misconduct, for if there be no negligence the driver of an automobile must be operating it in accordance with all the rules of the road and the dictates of prudence and caution. It is obvious that under such circumstances there could be no wilful misconduct. It should be true that wilful misconduct is 'more than negligence, however gross'.

"Gross negligence has been defined as 'the want of slight diligence', as 'an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others', and as 'that want of care which would raise a presumption of the conscious indifference to consequences'. (*Howard* v. *Howard, supra; Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327] ; 19 Cal. Jur. 554, and cases cited.) When the legislature in 1931 omitted gross negligence from the grounds upon which a guest could recover damages against the owner, driver, or person responsible for the operation of the motor vehicle, it restricted the right of recovery to intoxication or wilful misconduct. While negligence may be involved in wilful misconduct it is apparent that the legislature intended to confine the right of recovery to a degree of carelessness and recklessness that is greater

beyond that which the law then knew and defined as gross negligence, and which is 'wilful' on the part of the responsible persons.

"(1) While it is difficult to define that degree of carelessness which the legislature must have had in mind, it is my opinion that it must be held that wilful misconduct is wilfully, that is intentionally, doing something which a driver should not do, or failing to do something which he could do in the operation of a motor vehicle under circumstances from which an accident and injury to the passenger would be probable. Of course, wilful misconduct may be inferred from the circumstances surrounding the accident."

In the case of *Howard* v. *Howard, supra,* in which case a petition for a hearing in the Supreme Court was denied, the court said:

"While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence, and that this misconduct must be wilful. While the word 'wilful' implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and presumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a probable (as distinguished from possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result."

Therefore, having in mind the facts in this case and analyzing these facts in the light of the definitions of wilful misconduct, we are of the opinion that such wilful misconduct was clearly shown to exist in the acts and conduct of defendant.

The judgment is affirmed.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1934.

Langdon, J., dissented.